Your honors, good morning. May it please the court. I'm Adam Lawton of Munger Tolson Olson and I'm here today on behalf of the petitioners in Ada Abdalyan. As the court knows, this case is at its second visit here. The court previously remanded this case. And we're here again today because the BIA didn't comply with the remand or the mandate on remand. The government encourages the court to deny the petition or sorry to dismiss the petition on jurisdictional grounds and to deny it on the merits. As we've explained in our briefs, the jurisdictional issue was already addressed and resolved in my client's favor in the 2006 decision. So it's the same issue here this time. So unless the court has questions on the jurisdictional issue, I'd like to turn directly to the merits. How do you how do you read that 2006 decision as opening up the issue that you argue today? Well, so what is what is in the language of that decision? Very short order. Language in that decision. Number one is we have jurisdiction. That's plain on the on the face of the order. Who is we? Is that the Ninth Circuit or the BIA? The Ninth Circuit order says we have jurisdiction. And the jurisdictional the exhaustion inquiry, as this court has noted several times in in in the Abebe case, for example, the ultimate question is whether the BIA had adequate notice of the issue. And when the Ninth Circuit issues a mandate saying that the BIA should address the admissibility issue on remand, then the BIA presumably has noticed that it should be addressing the inadmissibility issue on remand. I guess that's the issue. OK. So the first time this case was before this court, the government's the government's only argument in its brief was lack of jurisdiction. Those briefs are available on Westlaw. Presumably you can access them through through your your docking system as well. And the court, the court did not rule on those grounds. Dismissed the petition for lack of jurisdiction the first time. And if there was if there was jurisdiction to grant the petition and remand on this very issue, then there's some jurisdiction exists now. Council, it's Judge Gould with a question for you. You know, it's somewhat ambiguous, so I'm not sure if that type of argument is the law of the case. But what I wondered was on the remand, the the BIA, I think, indicated that they had considered the argument on the merits. There's some language they used that I read to suggest that they may have rejected an issue that hadn't been raised. But then they went on to discuss it on the merits. And is that sufficient for exhaustion? If if the BIA said the IJ's opinion was thorough and well-reasoned, does that. Is that not enough of a of a merits evaluation so that we might fit in the rule that says if they reach the merits, then we don't have to worry about exhaustion and we have jurisdiction. Judge Gould, you're absolutely correct. And thank you for helping me elucidate that point. Again, that's that is also a holding of the ABB case, that if the board reaches the merits, regardless of whether there was a procedural defect in the papers, which again, I'm not necessarily willing to concede that. But if the BIA reaches the issue on the merits, then the issue, then the issue is exhausted before the agency and it's preserved for this court's review. The ABB case, the government does not discuss in its brief. And I believe that controls the issue. If if if I had to predict the way that the government would respond to the to our argument on ABB, the government, based on what I what else is in its brief, would say that ABB was a Burbano affirmance and we do not have a Burbano affirmance here. I think that this case is actually an easier case than a Burbano affirmance, because as the split in between the majority and the dissent in ABB noted, there's possibly some ambiguity as to what does a Burbano affirmance mean. Here, there's no Burbano affirmance. There's the BIA saying we looked at the evidence and based on the evidence, here's our ruling on the merits of the case. And that's a substantive merits ruling. And that satisfies the exhaustion requirement. Counsel's Judge Gould with another question. Assuming that we have no problem on exhaustion, how do you view the evidence as whether it's sufficient to show that this grandmother was engaged in alien smuggling? Sorry, I'm not sure I understand your I'm not sure I caught your question correctly. On the merits, is there substantial? Is there substantial evidence that the petitioner was engaged in alien smuggling by virtue of her sitting with her grandson on the airplane or whatever she did before they flew here? Just just by that fact alone. No, Your Honor, there is not. And what's critical here is that the Board of Immigration Appeals found that the petitioner testified credibly. And part of her testimony, if I might flip to the record, on page 235, the testimony says, so based on what you knew, the visa came from the U.S. Embassy. Answer, yes. The answer is, oh, yes. And to establish alien smuggling, there's a specific intent required. The petitioner needs to have had knowledge and the intent to cause the alien smuggling. But if she didn't know that the visa was fraudulent, then But you have to take her word as gospel. Absolutely right. Even if there's evidence against it? If the BIA finds her credible, then her testimony is taken as true. If the BIA made an adverse credibility finding, then I would be making a different argument here. Isn't the credibility question really tied to whether or not she was believed when she was in the airport as compared to what the board and the Ninth Circuit previously thought was a conflict in her testimony or a conflict in the evidence, finding her, on the one hand, credible with respect to her airport statement, or not incredible, if you will, and then also looking at the record at the hearing where the question of alien smuggling was in focus? Your Honor, I think that's... Aren't there two issues, really? That is one potential reading of the record. But that is not, certainly as far as I can tell, that is not... Didn't the BIA say in their subsequent opinion that that's the way they read it and that they found, they focused on the evidence at the hearing to determine that there was alien smuggling? Your Honor, the BIA ordered... They say that, though, in their opinion, their more recent opinion. I would be happy to... You don't have to look at it. I just want to know how you see it. I do not see it that way, Your Honor. Okay. The board does not make an adverse credibility finding and does not say that we find the petitioner to have lacked credibility, either in the first order or in the second order. I see that my time is running down, so if I might reserve my final minute. Thank you. You're welcome. May it please the Court, my name is John Enkelson. I'll be presenting our arguments this morning on behalf of the United States. Your Honor, I... Counsel, it's Judge Gould. You can cover it any place you want to cover it in your prepared argument, but at some point I'd like you to review all of the evidence that was before the BIA that you think is sufficient to show alien smuggling. Okay. I will do that. I will lead off with that. I will say that it's the government's position that this is an issue that has not been exhausted, and I will come back to the exhaustion issue, which I... But, Your Honor, you can argue that as well, but assuming that it is exhausted... Okay. ...or that they addressed it on the merits and that we can therefore evaluate it, that's what I'm interested in. Okay. Assuming exhaustion for the sake of this argument, Your Honor, the issue, the standard in this case... No, no, no, not the standard. Listen to the question that Judge Gould asked. Okay. What is the evidence sufficient to allow the BIA to have found that there was alien smuggling? The evidence. Not the standard, not the argument, not the jurisdictional threshold, but the evidence. Okay. Your Honor, the evidence is the Board noted three instances, at least, that the IJ based three facts that the IJ based the determination on. The Board noted the testimony of the IJ before the IJ was evasive and that the petitioner was trying to conceal information. The Board noted that the immigration judge held that petitioner had visited the United States and knew how to obtain immigration documents and that the petitioner stated that, quote, she did not feel really comfortable to ask the son-in-law for all of the details on how he got the documents. And that... Counsel, let me interject a question before you elaborate on those. And I'll just indicate I'm only one judge here, and you may have a majority with the other two. But I'm quite disturbed with the evidence to characterize what the grandmother did as alien smuggling. And so I'd like you to address the U.S. government's perspective. I have had other alien smuggling cases that involve very serious crimes like, you know, Mexican mafia smuggling people across the border and getting them to safe houses and leaving someone to die in the desert if the border patrol came, or Chinese gangsters called snakeheads bringing women over to the U.S. and then forcing them into compulsory servitude because they can't pay the fees. So here we've got a grandmother sitting with her grandson on a plane, and he's got a fake visa. And now the government's saying, well, this is adequate to show alien smuggling. And I'm assuming that the statute does not require an element of compensation. But you can cover that. But still, just the evidence that you just reviewed is so speculative to me. In fact, if she said she went to the embassy and knew how to get a visa, well, so what? How does that show she knows that he's got a counterfeit visa? I'm not understanding that at all. Your Honor, I would differentiate this case from the two other, the Chinese and the drug cases. Those might be more extreme patterns. But pursuant to INA 212A6E1, which Petitioner was charged with, an alien who knowingly is encouraged, induced, assisted, abetted, or aided any other alien to try to enter the United States in violation of the law is inadmissible. So that is what she's being charged with. There might be more extreme cases, but if we look at that language. Now, the issue here is whether substantial evidence in the record supports, to the extent that there's jurisdiction here, supports the immigration judge's determination in this case, Your Honor. So the extent that there are these determinations by the immigration judge regarding the evasiveness, how they obtained the documents, and whether or not she felt comfortable, that, pursuant to the government's positions, represents substantial evidence in the record to. Well, let's put the evasiveness to the side for a moment. So the one element of proof you've stressed a couple of times is that she had been to the U.S. before, and she knew how to get a visa. I'm just asking, how does that permit a rational decision maker to infer that because she knew how to get a visa, that she knew that her grandson's visa was a fraud? As the government's position, Your Honor, that that is one factor that the immigration judge. Explain to me the rational connection. In other words, I understand they relied on that. But just like when we review a jury verdict, we almost always affirm, but there is a standard the Supreme Court set that we have to ask if any rational jury could have found the elements beyond a reasonable doubt. So what I'm asking you for help on is, how could a rational immigration judge or BIA conclude that because she knew how to get a visa, we should infer that she knew that the grandson's visa was a fraud? Just what's the reason that connects that? If she knew that there was a process in order to obtain a visa, whether it's going to the embassy, she had been through that and she knew what the procedures were for obtaining a visa. She knew that her grandson did not go through that. How did she know that? Excuse me? How did she know that her grandson did not go through the procedures of getting a visa from the embassy? The testimony in the record, Your Honor, is that the procedures that the grandson and she knew the procedures the grandson went through were different. Now, this is not the only basis for the immigration judge's determination. What did she know about how to get a visa? And what did she know about the grandson's different path to get a visa? Well, there's differences in the way that the photos were taken. There was differences in the timing, Your Honor. Can you give me a concrete response to that? I mean, her photograph was taken at the embassy and his photograph wasn't taken at the embassy. Her visa took six weeks, his took six hours. But those are count as substantial evidence in the record, Your Honor. But why does the evidence, are those things in the record? Pardon me, why does that tell her the visa was? It would lead her, that's one of the issues, it's one of the factors, Your Honor, that would lead her to... I mean, if the evidence were that the son-in-law had gone out on the corner and bought it from a itinerant visa seller, that would be different. But how does she know that the visa is bogus? Other than it was, the photographs are different and the son-in-law didn't do exactly the same thing she did. How does she know that that makes it bogus? Your Honor, so go into the position that that is one of the factors, that that would lead her... I mean, if you look at the immigration judge cites several different factors in his determination that she knew that this was not a valid document. Does each one individually taken apart from the others mean that she had full knowledge of it? That does not necessarily... Counsel, what are the others then? I mean, you've said she knew how to get a visa, okay, she did. And you said she was evasive. And we see that in a lot of IJ decisions, and that may be some way to that, but in terms of actual evidence of what she said or someone else said, it's not quite the same. So we have that she knew how to get a visa, and then speculation that because of some difference, her kid's visa or her grandson's visa was a fraud. You also have some evidence that, as I understood it, that she was asked if she had asked some other question to someone, and she said she didn't want to ask about it, or she didn't ask about it. But again, it seems like the IJ's theory is piling speculation upon speculation. And I'm trying to figure out why this type of position would be taken for a grandmother who's sitting with her grandson on an airplane without some evidence that somebody says she went and helped him get a fraudulent visa, or somebody says she said it was fraudulent. I mean, this stuff is fairly remote to my thinking. I think that when you add the factors together, Your Honor, the immigration judge made the determination. And if this issue had been before the board, which it was not, we could have gotten a further ruling on this. But it is the government's position that this constitutes substantial evidence. And I would also comment on the fact that this was not raised by the petitioner before the board, Your Honor. You're saying it wasn't appealed? That's correct, Your Honor. Alien smuggling aspect? That's correct, Your Honor. Only the asylum aspect was appealed to the board? That's correct, Your Honor. Is that your position? Yes, Your Honor. And you're saying only the asylum aspect goes to the issue of clarification? The Ninth Circuit found the testimony inconsistent with the finding of the BIA previously. That's correct, Your Honor. The court asked for a clarification as to how the petitioner. Do you think that clarification was intended both as to the asylum and to the alien smuggling question? The board, on remand, clarified for the court, in accordance with the court's mandate, how the immigration judge came to the determination that the petitioner was inadmissible. The board did not review the substance of that decision. Rather, pursuant to the court's mandate, spoke as to how the immigration judge came to the inadmissibility determination, based on the immigration judge's opinion. So there was not the board, either in the first board decision back in 2003, did not reach the merits of the inadmissibility determination. And then in this court's, pursuant to this court's mandate from 2006, which asked for clarification, the board clarified its decision, but did not review the merits of the underlying inadmissibility determination. And therefore, it's. Because she didn't appeal it. Because she did not appeal it. Because it was never before the board, Your Honor. Thank you. You've run out of your time. No, I know. Thank you, Your Honor. For the foregoing reasons, the government's position is the court should deny the petition for review. Thank you. Mr. Lawton, would you please address that last issue that she didn't appeal the ‑‑ she didn't contest the issue of eggs and spunking? Certainly. The Adibi case and several other subsequent cases from this court hold that raising the petitioner, or in the agency it's the respondent, raising the issue before the board is sufficient to exhaust the issue before the board. But it's not necessary. If the board goes ahead and reaches the merits independently, that's within the board's discretion to do, just as if the board chose to rule on a procedural default ground or not address the issue at all, then it would be a newly minted appellate issue. Both the original board order and the board order and the second board order use the words inadmissibility, and they discuss evidence, they discuss documentary evidence, testimonial evidence. That's a merits ruling, Your Honor. All right. Are there any other questions? I don't have any. Thank you. No, thank you. All right. Case of Diane versus Holder will be marked submitted. And we'll go to the third case of third case on the calendar. Fourth case, actually, Stanford versus Home Depot. And after Stanford versus Home Depot, we'll take a 15 minute break.
judges: Hart, Gould, Bea